UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN CONLEY,

    Plaintiff,

v.                                          Case No. 05-72355

JEFFERSON PILOT                   HONORABLE AVERN COHN
FINANCIAL INSURANCE
COMPANY,

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT**

**I. Introduction.**

This is an ERISA case (Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (ERISA)). Plaintiff Susan Conley (Conley) is suing defendant Jefferson Pilot Financial Insurance Company (Jefferson) under 29 U.S.C. § 1132(a)(1)(B)[1] claiming that Jefferson wrongfully denied her long term disability benefits under a Group Long Term Disability Insurance policy. Conley specifically says her medical condition, multiple sclerosis (M.S.), prevents her from performing all the duties of her job, thus qualifying her as totally disabled under the policy.

---

[1] This section provides:
(a) Persons empowered to bring a civil action.
A civil action may be brought–
(1) by a participant or beneficiary–
...
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Before the Court is (1) Plaintiff's Motion for Entry of Judgment, (2) Defendant's Motion to Dismiss, (3) Defendant's Motion for Summary Judgment, and (4) Defendant's Motion for Entry of Judgment. For the following reasons, defendant's motion for entry of judgment is GRANTED, Plaintiff's motion is DENIED, and the case is DISMISSED.

## II. Legal Standard – Motion for Entry of Judgment.

In Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609 (6th Cir. 1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in a denial of benefits action under ERISA. In Wilkins, the Court of Appeals said a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. 150 F.3d at 618-19 (Gilman, J., concurring in part and articulating the decision of the Court of Appeals on the issue regarding the standard of review).

Accordingly, the Court will decide this matter under the guidelines set forth in Wilkins[2] by rendering findings of fact and conclusions of law based solely upon the

---

[2] The court of appeals' "Suggested Guidelines" are as follows:

1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

administrative record. See Eriksen v. Metro. Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

### III. Analysis.

### A. Findings of Fact.

**1.**

Conley is 41 years old. Conley began working for SLB Property Management, LLC (SLB) in 1998, and was gradually promoted. She was a participant in a long-term disability (LTD) plan offered by SLB. The plan is governed by ERISA and administered by Jefferson.

The Jefferson policy sets forth the following procedures to qualify for LTD benefits. First, under the Elimination Period, no benefit is payable for the first 90 days of disability accumulated during a 180 day period. The Elimination Period is satisfied once an insured has 90 days of disability from the same illness during a 180 day period. Second, an insured must be disabled during the Own Occupation Period, which lasts for 24 months from the end of the Elimination Period.

The plan defines "Totally Disabled" as follows:

TOTAL DISABILITY or TOTALLY DISABLED means that an Insured Employee, due to an Injury or Sickness is unable:

1. during the Elimination Period and the Own Occupation Period, to perform each of the main duties of the Insured Employee's regular occupation; and

---

3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

Wilkins, 150 F.3d at 619.

2. after the Own Occupation Period, to perform each of the main duties of any gainful occupation for which the Insured Employee's training, education or experience will reasonably allow.

**2.**

Conley was managing two apartment complexes for SLB when, in the Spring, 2002, she was diagnosed with M.S.[3]  In December, 2002, Conley took a medical leave of absence and, upon her return, was transferred from manager of one property to be a leasing agent at another property.  The change was a demotion, but to a less stressful position.

In 2002 and into 2003, Conley continued to see doctors regarding her medical condition.  Her physical condition slowly deteriorated.  On August 15, 2003, Conley submitted a claim for LTD benefits.  She stated that she was disabled due to M.S.  Conley's last day of work was July 14, 2003.  In her claim, Conley stated a disability onset date of July 15, 2003.  She listed Dr. Peter Salvia as her primary care physician, and Drs. Jodi Ganley and Lionel Glass as neurology specialists providing treatment.

While the claim evaluation process continued, SLB terminated Conley for violating corporate procedures on July 22, 2003.[4]

On August 20, 2003, Dr. Salvia submitted a physician statement to accompany Conley's application for benefits.  Dr. Salvia diagnosed Conley with M.S. and as exhibiting the following symptoms: "parasthesias, non vertiginous, dizziness, pain arm

---

[3] Though not clear from the record, Conley continued to work for SLB after the diagnosis, left SLB later in 2002, but returned to manage another building shortly thereafter.  The circumstances of these events are unexplained in the record.

[4] After her termination, Conley sued SLB for discrimination.  The case settled out of court.

legs, blurred vision." Dr. Salvia noted that symptoms first appeared in July, 2002, and that Conley should not work. Dr. Salvia wrote that the "disease is unpredictable, both regression and improvement."

Conley submitted other medical documents supporting her claim, including: a May, 2002, letter from Dr. Ganley recounting the symptoms giving rise to the first diagnosis that she had M.S.; a May, 2002, letter from Dr. Glass diagnosing Conley with "demyelinating disease such as Multiple Sclerosis;" a July, 20, 2003, note from Dr. Salvia stating that Conley "has been totally incapacitated since July 15, 2003" due to the M.S.; and, a July 15, 2003, letter from Dr. Thomas Giancarlo diagnosing Conley with M.S. and stating she is disabled from work until September 21, 2003.

On November 24, 2003, Jefferson denied Conley's application for benefits stating that her disability was not severe enough to prevent her from performing the main duties of her job. Jefferson stated that Dr. Giancarlo said she could return to work on September 21, 2003, and, even with M.S., the tingling, numbness and cold problems with her limbs comes and goes. Jefferson concluded that the medical documentation did not support a disability severe enough to prevent Conley from performing the main duties of her occupation.

On May 17, 2004, Conley appealed Jefferson's decision, through counsel. In support of her appeal, Conley submitted: a December 11, 2003, progress note from Dr. Giancarlo confirming the M.S. diagnosis and stating that Conley should received disability coverage; a February 9, 2004, letter from Dr. Salvia observing parasthesias of left upper extremity with associated pain, weakness and intermittent numbness of digits, intermittent numbness of entire left side, and episodes lasting one hour to two days,

indicating a degenerative disc disease of the cervical spine; and, a May 6, 2004, progress note from Dr. Giancarlo citing increased fatigue and difficulty with left hand control.

On May 27, 2004, Jefferson sent a letter to Conley requesting additional documentation to support her appeal.  Jefferson requested medical records and the status of Conley's Social Security Disability application.

Conley responded, through counsel, by filing seven additional documents.  These documents included: a March 2, 2004, progress note from Dr. Giancarlo reporting pain in legs, numbness in left hand and fingers, poor balance/falls, right foot numbness, blurred vision, trouble swallowing, increased fatigue, and a spastic, broad-based gait; a report from Dr. Voci reporting an EDSS score of 5.0 as a result of a M.S. functional composite assessment test; a May 21, 2004, progress note from Dr. Giancarlo reporting increased fatigue, pain, disorientation, blurred and double vision, and that Conley walks with a limp and requires a cane; and four other reports from Conley's visits to doctors during the first half of 2004.

On July 20, 2004, a Registered Nurse reviewed Conley's file.  The nurse determined that Conley's medical situation did not support total disability beyond the Elimination Period.  Based upon this review, Jefferson advised Conley that benefits would remain denied.

On December 20, 2004, Conley appealed the decision and submitted two letters from her neurologist, Dr. Voci, dated September 16, 2004, and November 18, 2004.  The letters responded to the denial of benefits and included specific findings that Conley was permanently disabled and unable to work.

On January 31, 2005, Jefferson again denied benefits based on the opinion of a Disability Appeals Specialist. The denial letter stated:

> It is documented that Ms. Conley had a difficult time dealing with her diagnosis. At the date of disability and prior, [her] physical exams yielded little to no findings. It was not until approximately 12-14 months later that she began to have severe enough problems to start treatment and may start to have problems completing the essential functions of her own occupation.
>
> In summary, at the date last worked, and through approximately the next year, there is no medical evidence to support why Ms. Conley could not perform the main duties of her own sedentary to light occupation. As such, benefits cannot be approved.

Conley then filed this case.

### B. Conclusions of Law.

### 1. Standard of Review.

The parties agree that the standard of review on the motion for entry of judgment is de novo under Wilkins, 150 F.3d 609, because the company does not have discretionary authority to determine eligibility. This standard applies to the factual and legal determinations of the plan administrator.

### 2. Cross Motions for Judgment.

### a. Introduction.

Conley filed a motion for entry of judgment on the administrative record. Jefferson made three separate motions in the alternative: a motion to dismiss under FED. R. CIV. PROC. 12(c), a motion for summary judgment under FED. R. CIV. PROC. 56, and a motion for entry of judgment.

### b. Jefferson's Argument.

### i. Motion to Dismiss and for Summary Judgment.

Jefferson says Conley's complaint fails to state a claim upon which relief can be granted because it fails to assert that she was unable to perform the main duties of her regular occupation.  The complaint says that Conley "made an appropriate claim for benefits under said policy, which were denied," and that she "seeks award of such benefits."  Jefferson says Conley did not plead an inability to perform the duties of her occupation because, in a 2004 wrongful termination suit against SLB, she asserted that at all times prior to her September 22, 2003, termination she was able to perform the essential functions of her position, and that her July 22, 2003, termination was unlawful.

If matters outside the pleadings are considered by the court, the motion is treated as one for summary judgment.  Therefore, alternatively, Jefferson says summary judgment is appropriate.  Jefferson asks the Court to take judicial notice of Conley's complaint in the wrongful termination case to nullify her claim for disability benefits because the allegations refute her present contention that she was unable to do her job after September 22, 2003, during the Elimination Period.

### ii. Motion for Entry of Judgment.

Jefferson supports is motion for entry of judgment by again saying Conley's assertions in the SLB lawsuit are inconsistent with a claim for disability benefits. Jefferson admits that Conley had M.S., or a condition like it, by about May, 2002, but says the question is whether her condition rendered her unable to perform the main duties of her regular occupation.  Jefferson says Dr. Giancarlo's progress note stating

that Conley would be disabled from work from July 15 though September 21, 2003, due to injuries from a "bad travel experience," coincides with her return from a summer vacation. Also, such a disability lasted only 68 days, meaning no medical evidence showed a disability severe or consistent enough to prevent her from working beyond September 21, 2003.

Jefferson says the documents included in Conley's appeals do not show she was unable to perform the main duties of her job, though one from early 2004 stated that Conley "believes she can no longer work;" Jefferson infers from this that previously she was able to work. Jefferson says the additional documents Conley submittedin July, 2004, also did not include a statement that she was unable to perform the main duties of her job. Jefferson says the late-2004 notes from Dr. Voci do not support the conclusion that Conley could not work on July 15, 2003 through mid-2004. Even if Conley was disabled by September, 2004, Jefferson says the Elimination Period required Conley to accumulate 90 days of disability within 180 days starting on July 15, 2003. The 180-day window ended on January 11, 2004. Granting Conley the 68 days of disability asserted in Dr. Giancarlo's July 15, 2003, letter, Jefferson says she never satisfied the Elimination Period requirement by being totally disabled again before January, 11, 2004. Finally, Jefferson says the September, 2004, statement did not establish disability in July, 2003.

### c. Conley's Argument.

In both her motion for entry of judgment and her response to Jefferson's motion, Conley says the evidence establishes that she was disabled and that Jefferson improperly denied LTD benefits under the insurance policy. Conley says she sufficiently

pleads an inability to perform her job.  Conley says her lawsuit against SLB did not contradict her request for benefits because the SLB case included wrongdoings by SLB starting in late-2002, before the onset of her permanent disability.  Conley also says the SLB case was resolved with no decision on the merits, and nothing shows she was able to perform each of the main duties of her occupation.

Conley says Dr. Giancarlo's statement of disability through September 21, 2003, and his December 11, 2003, progress note stating that she should receive disability coverage proves that she was unable to perform the duties of her occupation, thus qualifying her for benefits.

### 3. Resolution.

This case can be resolved by considering the competing motions for entry of judgment.  Conley says she did not have to be totally disabled, but, rather, that she only had to be unable to perform each of the main duties of her regular occupation.  Yet under the policy definition, being unable to perform each of the main duties of her occupation is the definition of "totally disabled."

Reviewing the medical evidence <u>de novo</u>, Conley did not satisfy the Elimination Period.  After the 68 days of disability ordered by Dr. Giancarlo, Dr. Salvia observed that the disease is "unpredictable" and that the problem "comes and goes."  No additional time off of work was ordered after September 21, 2003.  Based on this inconclusive medical evidence, it is not clear whether Conley was unable to perform the main duties of her occupation at any other time before the expiration of the 180 day Elimination Period.  Though unstated, this may be in part because SLB terminated Conley on September 22, 2003.  From the medical records, however, neither Jefferson nor the

Court see evidence that Conley was unable to work.  Dr. Giancarlo's subsequent statement that she should get benefits is not a statement as to her ability to perform her occupational duties.

Jefferson doubts the source of Conley's disability by noting that she reported physical injuries associated with travel right before claiming disability, and because Conley asserted in her SLB complaint that she was able to work at all times.  This evidence is not helpful, however, as her medical records are what dictated the finding of not disabled at the time.

Finally, the late-2004 medical reports cannot support a determination that Conley was unable to work in 2003 during the Elimination Period.  From September, 2003, through September, 2004, no doctor concluded that Conley was unable to work in her regular occupation.  Conley is not entitled to LTD benefits.[5]  Jefferson's motion for entry of judgment is GRANTED.[6]

SO ORDERED


Dated:  April 13, 2006                      s/Avern Cohn
                                            AVERN COHN
                                            UNITED STATES DISTRICT JUDGE

---

[5] The Court's decision is based on Conley's failure to satisfy the Elimination Period.  Conley also may not have met the 24 months of continuous disability required by the policy to receive LTD benefits under the Own Occupation Period.

[6] Conley noted in her reply brief that she was approved for Social Security Disability insurance benefits on November 21, 2005.  The approval stated that she has been under a disability as defined by statute since July 15, 2003.  This is not medical evidence upon which Jefferson could make a decision to grant benefits.

**05-72355 Conley v. Jefferson Pilot Financial Insurance Co.**

## Proof of Service

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 13, 2006, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager
        (313) 234-5160